United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DRONE LABS, LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DEDRONE HOLDINGS, INC.,<br><br>　　　　Defendant. | Case No. 19-cv-01281-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Docket No. 45 |

　　Plaintiff Drone Labs, LLC has sued Defendant Dedrone Holdings, Inc. for patent infringement. The patent at issue is the '018 patent. Previously, the Court granted Dedrone's motion to dismiss the first amended complaint ("FAC") but with leave to amend. Drone thereafter filed its second amended complaint ("SAC") and Dedrone now moves to dismiss the SAC. According to Dedrone, Drone has failed to adequately plead direct patent infringement – *i.e.*, Drone has not pled that the accused products meet all of the limitations of the relevant claims. *See* SAC ¶¶ 40-41 (alleging that Dedrone infringes on claim 1 of the '018 patent, the only independent claim, as well as claims 2-10, which are all dependent claims). Dedrone further argues that dismissal is warranted because the '018 patent does not cover patent eligible subject matter. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** Dedrone's motion.

## I.　　FACTUAL & PROCEDURAL BACKGROUND

　　The '018 patent is titled "System for identifying drones." In the '018 specification, the abstract explains that the invention is "[a] system for identifying a drone . . . adapted to determine a base threat value for a drone" – ultimately, so that "the user can determine whether the drone is a

friend or foe." '018 patent, abstract. The full text of the abstract is as follows:

> A system for identifying a drone is adapted to determine a base threat value for a drone. The system includes a scanning system, configured to obtain data that is stored in a pattern database. A timer that has a data structure for storing a counter initialized to a predetermined value, the time being operable to iteratively increment the counter if the counter value is less than a time increment. A microprocessor is programmed with instructions to receive information from the scanning system about the drone. Then, to store the information in a pattern database. After that, to determine a base threat value of the drone based on the information stored in the pattern database. Finally, to communicate the base threat value to a user so that the user can determine whether the drone is a friend or foe.

'018 patent, abstract.

The '018 patent has only one independent claim, *i.e.*, claim 1. (The remaining claims, claims 2-10, are dependent claims.) Claim 1 reads as follows:

> 1. A system for identifying a drone is adapted to determine a base threat value for a drone; the system comprising:
>
> a scanning system, wherein the scanning system obtains data that is then stored in a pattern database;
>
> a timer; the timer having a data structure for storing a counter initialized to a predetermined value, the timer being operable to iteratively increment the counter if the counter value is less than a timer increment;
>
> a microprocessor, programmed with instructions to:
>
> > receive information from the scanning system about the drone;
> >
> > store the information in a pattern database;
> >
> > determine a base threat value of the drone based on the information stored in the pattern database;
> >
> > communicat[e] the base threat value to a user so that the user can determine whether the drone is a friend or a foe; and
> >
> > start the counter and perform the following instructions in a loop until the timer increment is reached:
> >
> > > receiving identifying information from a transponder signal from the drone;
> > >
> > > calculating an updated threat level based on the identifying information;

| | |
|---|---|
| 1 | receiving position information including a distance, a location, a speed, and an altitude from the drone; |
| 2 | re-calculating the updated threat level based on the position information; |
| 3 | |
| 4 | determining a compass position of the drone; |
| 5 | re-calculating the updated threat level based on the compass position; |
| 6 | logging the updated threat level in the pattern database increment the time. |

'018 patent, claim 1.

According to Drone, "Dedrone's marketing materials indicate that Dedrone's core system operates in the same way as [Drone's] patented invention, which iteratively makes a threat assessment based upon data that is . . . ingested into a scanning system, processed, and evaluated as a potential threat using information stored in a database." SAC ¶ 31. In particular:

- "The Accused Drone Detection System scans the surrounding area to obtain data and store the data in a database containing drone-related data." SAC ¶ 48.
- "The microprocessors in the Accused Devices receive information from the scanning system about the detected drone; process, manipulate and store the retrieved information; and compare the gathered data about the identified object against information stored in a database to assess whether the object is recognized or poses a threat to the area being monitored. The Accused Drone Detection System then alerts the user to determine whether the detected drone is a friend or foe." SAC ¶ 43.
- "Upon information and belief, the Accused Drone Detection System receives information from its RF sensors about the detected drone – including information such as distance, location, speed, altitude, and other captured data – and it uses this information to query the DroneDNA database to assess and evaluate the threat posed by the detected drone, process the returned results, memorialize/capture the newly-queried information, and alert the user to any perceived threat." SAC ¶ 44.
- "[T]he Accused Drone Detection System also detects the 'compass position' or its

functional equivalent (i.e., a measurement of direction) for a detected drone . . . ." SAC ¶ 44; *see also* SAC at 18 n.23 (stating that "the compass position (i.e., the directional measurement) of a monitored drone is measured and considered in assessing threats of an approaching drone and displaying those threats to the user"). Drone provides a picture from Dedrone's DroneTracker User Interface 4.0 Cloud System Manual to support the allegation that the accused system has the compass position limitation. According to Drone, the picture "depict[s] [an] alert screen with locations of RF Sensors, directional measurements of detected drones (i.e., compass positions depicted with yellow lines), drone position estimates, and mapping of alert zone)." SAC ¶ 44.

- "[T]he Accused Drone Detection System works in real-time by continuously monitoring and assessing the perceived threat of an identified drone." SAC ¶ 44. "The Accused Drone Detection System continuously updates the magnitude of the threat posed by the identified drone and reports the assessment to the user, including its proximity to the monitored location. The Accused Drone Detection System continuously monitors the predefined area to provide real-time information to the system user." SAC ¶ 44.

## II. DISCUSSION

As noted above, Dedrone moves to dismiss the SAC based on two grounds: (1) for failure to plead that the accused products meet all of the limitations of the relevant claims, and (2) for invalidity of the '018 patent based on nonpatentability. Both arguments are made pursuant to Federal Rule of Civil Procedure 12(b)(6). *See, e.g.*, *Genetic Techs. Ld. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016) (noting that patent eligibility is a question of law and that the Federal Circuit has "repeatedly recognized that in many cases it is possible to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion").

To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a

4

plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

In the instant case, there are serious questions as to whether the '018 patent is invalid based on nonpatentability – even taking into account that invalidity must be proved by clear and convincing evidence. *See Cisco Sys. v. Uniloc USA, Inc.*, No. 18-cv-04991-SI, 2019 U.S. Dist. LEXIS 76335, at *6-7 (N.D. Cal. May 6, 2019) ("[A]n alleged infringer asserting an invalidity defense pursuant to § 101 bears the burden of proving invalidity by clear and convincing evidence."). For example, is a fair argument that the focus of the patent – or what the patent is directed to – is an abstract idea, *see Thales Visionix, Inc. v. United States*, 850 F.3d 1343, 1349 (Fed. Cir. 2017); *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1287 (Fed. Cir. 2018), *i.e.*, "the abstract idea of collecting information about a flying object [and] determin[ing] whether it is a threat." Mot. at 12. *See, e.g.*, *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (holding that the patent claim at issue – which covered "[a] method of detecting events on an inter-connected electric power grid in real time over a wide area and automatically analyzing the events on the interconnected power grid" – was essentially about "collecting information, analyzing it, and displaying certain results of the collection and analysis," all of which were abstract ideas).

There is also a fair argument that the '018 patent lacks an "inventive concept in the application of the ineligible matter to which . . . the [patent] is directed," *id.* at 1354 (internal

5

quotation marks omitted) – *i.e.*, that the determination of whether the flying object is a threat involves nothing more than mental processes that the human mind can engage in, at least in the absence of a more specific explanation of what the '018 teaches beyond perceiving a flight pattern that can be humanly perceived as posing a threat. *See* Mot. at 13 (arguing that "[h]umans have observed birds for millennia and mentally determined whether they are a threat based on how big they are, how close they are, how fast they are moving, their altitude, and other observational characteristics"); *see also Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1146 (Fed. Cir. 2016) (noting that mental processes that can be performed by the human mind are "'a subcategory of unpatentable abstract ideas'"); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011) (explaining that "computational methods which can be performed entirely in the human mind are the types of methods that embody the 'basic tools of scientific and technological work' that are free to all men and reserved exclusively to none"). It is not at all clear that the '018 patent does something beyond human capacity (*e.g.*, processing subtle observations beyond those perceptible by humans, using an algorithm in calculating the level of threat exceeding the capacity of human calculation, etc.).

The Court, however, need not resolve the issue of patentability because there is a simpler and independent basis for dismissal of the SAC. That is, as Dedrone argues, Drone has failed to adequately plead that the accused products critical claim limitations of the '018 patent. The Court focuses on claim 1 as that is the only independent claim in the '018 patent.

The Court acknowledges Drone's argument that Dedrone seems to be demanding that Drone map claim limitations on to the accused product with the kind of specificity that one would expect from infringement contentions. The Court also acknowledges Drone's assertion that Dedrone is essentially taking claim construction positions here even though a *Markman* hearing is far down the road. These arguments are not without some merit, at least as to some of the claim limitations that Dedrone has addressed in its papers.

The problem for Drone is that there is at least one claim limitation for which Dedrone is not asking for infringement-contention-like specificity and for which no claim construction issue is apparent – namely, the "transponder" claim limitation. *See* '018 patent, claim 1 (providing for

"receiving identifying information from a transponder signal from the drone"). At the hearing, Dedrone provided the "transponder" claim limitation as one example where Drone had failed to plead a claim limitation in the SAC.[1] In response, Drone cited to paragraphs 42-44 in the SAC; however, nowhere in these paragraphs is there a reference to the accused products receiving anything from a transponder signal from the drone. *See, e.g.*, SAC ¶ 43 (alleging that "[t]he microprocessors in the Accused Devices receive information from the scanning system about the detected drone"); SAC ¶ 44 (alleging that "the Accused Drone Detection System receives information from its RF sensors about the detected drone").

Because Drone has failed to adequately allege the "transponder" claim limitation in its SAC, the Court finds that dismissal of the SAC is warranted. The only remaining issue is whether the dismissal should be with or without prejudice. Because the Court previously gave Drone the opportunity to file the SAC after it failed to adequately plead all claim limitations, the Court finds that, at this juncture, dismissal with prejudice is appropriate. *Cf. Telesaurus VPC, Ltd. Liab. Co. v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (noting that leave to amend may be denied "if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies").

///
///
///
///
///
///
///
///
///

---

[1] The Court notes that Dedrone did not bring up the "transponder" claim limitation until its reply brief. *See* Reply at 3. Nevertheless, Drone was given an opportunity to address the claim limitation at the hearing and thus was not prejudiced as a result.

### III. <u>CONCLUSION</u>

For the foregoing reasons, the Court grants Dedrone's motion to dismiss with prejudice. To the extent Drone noted at the hearing that it wished to add new claims of patent infringement based on a continuation patent application that was recently granted, it is not precluded from filing a new patent infringement case. However, this case is now closed.

The Clerk of the Court is directed to enter a final judgment and close the file in this case.

This order disposes of Docket No. 45.

**IT IS SO ORDERED**.

Dated: September 12, 2019

_____
EDWARD M. CHEN
United States District Judge